JOSE R. VIEIRA *vs.* EAST TAUNTON STREET RAILWAY
COMPANY
(and a companion case [1]).

Bristol.   October 31, 1946. — January 3, 1947.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Evidence,* Relevancy and materiality; Competency; Opinion: expert.
   *Negligence,* Bus.   *Proximate Cause.*

Certain testimony as to the conduct of a bus operator shortly before
   reaching the scene of a stop so sudden that a passenger was injured
   was not remote from the issues of the operator's negligence and its
   causal connection with the injury.

Evidence of the circumstances in which the operator of a bus, with un-
   diminished speed of thirty-five to forty miles per hour, approached
   close to boys playing at the sides of the street and then suddenly and
   violently stopped the bus to avoid striking one of them, whereby a
   passenger was "lifted" from his seat and fell to the floor of the bus
   and was injured, warranted findings that the operator was negligent
   and that his negligence was a proximate cause of the injury.

In an action for personal injuries, a question to a witness as to whether
   he had "noticed any change in the apparent memory of" the plaintiff
   after he was injured was not objectionable on the ground that it called
   for the witness's opinion.

TWO ACTIONS OF TORT.   Writs in the First District Court
of Bristol dated August 19, 1940.

Upon removal to the Superior Court, the cases were
tried before *Warner, J.*

In this court the cases were submitted on briefs.

*F. E. Smith,* for the defendants.

*E. A. Hathaway & B. H. Friedman,* for the plaintiff.

WILKINS, J.   These two actions of tort, one against the
owner and the other against the operator of a bus, are
brought by a passenger who was hurt due to allegedly
negligent operation.   The jury returned verdicts for the
plaintiff.   The defendants' exceptions, in so far as argued,

---

[1] The companion case is by the same plaintiff against Edward Zeiba.

concern rulings on evidence and the denial of their motions for directed verdicts.

The jury could have found the following facts: On November 13, 1939, the plaintiff was sitting in the middle of the back seat of the bus on the way from East Taunton to Taunton. The seat ran across the rear of the bus, and there was an aisle down the middle with seats on both sides. The bus with about six passengers crossed the Taunton River by "Neck-O-Land" Bridge and continued on Summer Street, rounding a curve which obstructed the view. The rate of speed was thirty-five to forty miles per hour at a point one eighth to one quarter of a mile before reaching the bridge, and that rate was not reduced until the occurrence hereinafter described. Beyond the curve the road straightened out. This was in "a thickly settled district," with five or six houses and two gasoline stations. Beyond the curve the bus passed Ingell Street on the left. At that time there were some boys in both gutters and on the right sidewalk about one hundred to three hundred feet ahead. They were kicking a football from one side of the street to the other. "As the bus approached the vicinity of the children," a boy went in front of the bus after a football. The bus (which was twenty-six or twenty-seven feet long) was from one to one and one half bus lengths from the boy when the individual defendant without signal or warning put on the brakes. The "brakes were applied hard with a sudden jerk." The "driver really snapped them on." It was "kind of a bad stop." The bus had "dual wheels at the rear," and was equipped with four wheel hydraulic brakes. It stopped quickly about three feet from the boy. The plaintiff unsuccessfully tried to hold himself in the seat but did not have strength enough because the operator "stopped so fast." When "the bus stopped it lifted" the plaintiff up and he started to run. He tried to take hold of the seat in front, but it was slippery, and he "kept on going." At the front of the bus he turned around, fell on his back, and struck his head against the pipe which held the fare box and then against some metal on the floor. As testified by

the individual defendant, the bus stopped, and the plaintiff "was right down there almost one, two, three, like that." Two other passengers were thrown from their seats to the floor.

On direct examination the plaintiff was asked, "On the way down, or at least close to Neck-O-Land Bridge, did you see Mr. Zeiba [the individual defendant] or Mr. Goldstein [a passenger], doing anything?" and he answered, "Yes." Subject to the defendants' exception, he was then asked, "What did you see them do?" and he answered, "One started to talk with the other and they kept going just the same." A Mrs. Dutra, a witness called by the plaintiff, subject to the defendants' exception, was asked, "as the bus was approaching this curve, Neck-O-Land Bridge, did you see Mr. Zeiba do anything in reference to Mr. Goldstein?" and she answered, "They were talking but the driver didn't take his eyes off the street." No objection was made on the ground that part of the answer was not responsive. *Harrington* v. *Alessi,* 269 Mass. 433, 437. *Kelly* v. *Boston & Maine Railroad,* 319 Mass. 603, 610. There was no error. The evidence in each instance was admissible to show the conduct of the driver at a material time. The plaintiff testified that one of the gasoline stations, which was "around the curve," was about one hundred feet from the bridge. The individual defendant testified that the accident happened about two hundred fifty feet "from the curve." The questions were not directed to a subject matter too remote from the proper issues. See *Commonwealth* v. *Leone,* 250 Mass. 512, 515.

The motions for directed verdicts were rightly denied. The jury could find that there had been an undiminished rate of speed of thirty-five to forty miles an hour for more than one eighth of a mile before reaching the bridge, which was about one hundred feet long, and that that rate was maintained in a "thickly settled district" around a curve with obstructed vision, by Ingell Street, an intersecting way, and up to a point which was too near to where the boys were playing football in the street. That rate of speed, which was prima facie greater than was reasonable and proper under

G. L. (Ter. Ed.) c. 90, § 17, could be found to constitute causal negligence. *DeFrancisco* v. *Heath*, 306 Mass. 527, 529–530. *Desroches* v. *Holland*, 285. Mass. 495. See *Marshall* v. *Carter*, 301 Mass. 372, 376; *Snow* v. *Nickerson*, 304 Mass. 63, 66. The jury also could have concluded that the operator should not have approached the boys without slowing down or taking other precautions to obviate a wholly foreseeable sudden and violent stop with the attendant danger to passengers. *Clark* v. *Blair*, 217 Mass. 179, 181. *Leonard* v. *Fowle*, 255 Mass. 531, 532. *Wright* v. *Carlson*, 312 Mass. 584, 587–588. "Proper conduct in an emergency is no defence to one whose negligence created the emergency. *McBride* v. *Middlesex & Boston Street Railway*, 276 Mass. 29, 33. *Crowley* v. *Fisher*, 284 Mass. 205, 207." *Birch* v. *Strout*, 303 Mass. 28, 33. This is not a case like *Bratton* v. *Rudnick*, 283 Mass. 556, or *Bellows* v. *Worcester Storage Co.* 297 Mass. 188, 196, where the causal connection between the original wrong and the ultimate harm had been broken by another occurrence which constituted "an intervening efficient, independent and dominant cause."

A ruling on evidence relating to the issue of damages remains for consideration. The daughter-in-law of the plaintiff, called as his witness, testified that he was well before the accident. Later, subject to the defendants' exception, she was asked a question (not exactly quoted in the record) to the effect "If she had noticed any change in the apparent memory of her father-in-law from the time before the accident and since the accident." She answered "that after the accident he has been very forgetful." The ruling was right. It has been repeatedly held that a witness of ordinary intelligence who is familiar with a person may testify whether in a given time he has failed mentally or physically. *Parker* v. *Boston & Hingham Steamboat Co.* 109 Mass. 449, 451. *Barker* v. *Comins*, 110 Mass. 477, 480; 487. *Commonwealth* v. *Brayman*, 136 Mass. 438, 440. *Clark* v. *Clark*, 168 Mass. 523. *Gorham* v. *Moor*, 197 Mass. 522, 523–524. *Raymond* v. *Flint*, 225 Mass. 521, 524. *Neill* v. *Brackett*, 241 Mass. 534, 540. The defendants, while conceding this, contend that the question did not call

for any fact, act, or speech indicating a change. Such a construction would be a triumph of form over substance. Rightly interpreted, the question called for facts and not for the opinion of the witness. *Robinson* v. *Springfield Street Railway,* 211 Mass. 483, 485–486.

*Exceptions overruled.*